IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Guild Associates, Inc. | : | |
| | : | |
| Plaintiff, | : | Case No. 2:13-cv-01041 MHW-TPK |
| | : | |
| vs. | : | |
| | : | |
| Bio-Energy (Washington), LLC | : | |
| | : | |
| Defendant. | : | |

**REPLY IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS [DOC. 54]**

**FIRST** - In its "first" point contra (beginning on PAGEID # 1248), BEW says that it has produced all "discoverable documents." However, comparing the Bate-numbers on BEW's production with the number of pages actually produced reveals that approximately 8,000 pages are missing. However, this number could be closer to 10,000 pages, nearly half of BEW's production.[1] Furthermore, it appears that even the scientific reports relied upon by BEW that were attached to Doc. 62-2, the Declaration of David Palumbo in support of BEW's opposition to the pending motion, were not produced.[2] The fact that critical reports and thousands of pages are missing does not inspire confidence.

In short, there is concern that BEW has omitted significant information concerning numerous aspects of the case, including but not limited to:

---

[1] Affidavit of Counsel, Scyld D. Anderson at ¶2-¶4, attached.
[2] Affidavit of Counsel, Scyld D. Anderson at ¶5, attached.

- The feed gas stream entering Guild's nitrogen removal unit (NRU), such as pH, moisture content, concentration of amines, etc. (relevant to the effects of the gas on the adsorbent media);

- BEW's response to acidification, such as injection of amines, measuring pipe thickness, replacing damaged pipes, etc. (relevant to the existence and amount of acid in the System);

- Moisture entering or being created in in the System (relevant to BEW's claims that insufficient moisture was present interact with acids);

- All data and documents underlying the opinions of BEW's specially-retained experts;

- All data and documents underlying the opinions of BEW's in-house experts;

- Actual run data showing information about gas compositions, flow rates, pressures, performance and outputs, both before and after re-configuration (relevant to all aspects of the case);

- NRU and overall System monitoring data (relevant to all aspects of the case);

- Involvement of third-parties in responding to problems with the System, including the NRU, and alternatives to Guild's products (relevant to counterclaims);

- BEW/Ingenco's settlement with original project engineer, Merichem (relevant to counterclaims and set-off)

- Results of attempts to determine performance of replacement media (relevant to all aspects of the case);

- Information relevant to aspects of the System other than components supplied by Guild that could potentially have an impact on the System's overall output and performance (relevant to BEW's claims of millions of dollars of incidental damages); and,

- Financial income/expense information (relevant to BEW's claims of millions of dollars of incidental damages).

BEW argues that, because Guild has not proven that the System was damaged by acid or response to acid, Guild may have no discovery about it. This argument puts the cart before the

2

horse.  The mere fact that BEW disagrees with Guild concerning acid does not somehow foreclose discovery.

BEW says that the issues of "acid" and other System conditions are not relevant to Guild's initial claims, so Guild should not have discovery about it.  Guild's central, initial claims are for non-payment and declaratory relief under the Repair Agreement.  As is noted above, BEW has not produced many items that are relevant to Guild's initial claims.  Also, by its counterclaims and the counterclaim defense of set-off, BEW also made central the issues of acids and other System conditions.

BEW suggests that, because Guild had years before filing suit in which to develop empirical support concerning the cause of damage to Guild media and baskets, Guild should not have discovery now.  The suggestion tells more about BEW than it does about Guild, particularly in light of BEW's spoliation of the broken basket.  Guild was focused on helping BEW keep the System running, not focused on placing blame.  In contrast, it appears that BEW was secretly focused on placing blame, so much so that now it tacitly denigrates Guild as ineffectual.  In short, the cynical suggestion that Guild should have been tactically positioning does not mean that Guild should be foreclosed from having discovery now.

**SECOND** – In its "second" point contra (beginning on PAGEID # 1249), BEW says that it is only producing documents that directly relate to the equipment and services provided by Guild, and that it is refusing to produce all else.  However, as is noted in the bullet points above, Guild maintains that BEW has not even produced all documents that directly refer to relate to the equipment and services provided by Guild, let alone produced all that pertain to the larger set of facts surrounding BEW's counterclaims.

BEW contends that Guild's motion to compel production should be denied because Guild filed its motion to compel before filing its response in opposition to BEW's motion for a limited stay of discovery. However, there is no rule that says one must include a motion to compel discovery with a response in opposition to motion to stay discovery, particularly when the motion to stay discovery purports to be limited in scope, but the motion to compel discovery is not limited and goes well beyond the motion to stay. The repercussions of BEW's refusal to produce documents as described in BEW's motion to stay are broad, but BEW's failure to produce documents overall is even broader. Therefore, Guild filed its motion to compel.

**THIRD** – In its "third" point contra (beginning on PAGEID # 1250), BEW argues that it does not have to produce certain documents because, in order to prevail on its counterclaims, BEW only has to prove that Guild's diffuser baskets were negligently designed. BEW oversimplifies. BEW has to prove both negligent design and has to prove that damages were proximately caused as a result of negligent design. Again, many of the documents that Guild seeks pertain to damages and proximate cause of damages, as well as other aspects of the case, separate and apart from basket design.

**FOURTH** – In its "fourth" point contra (beginning on PAGEID # 1250), BEW suggests that lack of documents is not stalling depositions in the case. As the Court appreciated in January 2014 [Doc. 17, Preliminary Pretrial Order, at PAGEID # 406], it is best to exchange documents before depositions. That way, follow-up depositions are not needed. BEW's documents are desired by Guild both to prepare Guild's people for depositions, and to prepare to take the depositions of BEW's people. The fact that BEW attempted to end-run orderly discovery in this case early by issuing third-party subpoenas to Guild in a coverage case is

irrelevant.  BEW should produce its documents, and it has become abundantly clear that BEW will not do so without intervention by the Court.

BEW also refers to its motion to compel Guild to re-organize and label documents [Doc. 56], as if that were a reason for BEW not to produce documents.  As is briefed elsewhere [Doc. 65], Guild produced its documents as kept in the usual course of business, which is a proper alternative to organizing/labeling documents to correlate with BEW's numerous, often vague, formal requests.  Regardless, the question of whether Guild's documents should be labeled is separate from BEW's obligation to produce documents.  If anything, the striking inadequacies in BEW's production should be counted against BEW in the greater balance of parity in discovery.

**FIFTH** - In its "fifth" point contra (beginning on PAGEID # 1251), BEW says Guild filed its motion to compel without complying with F.R.Civ.P 37(a)(1).  BEW is mistaken.  The rule states that a party who is moving to compel disclosure must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Guild provided this certification in the form of the Affidavit of Counsel, J. Stephen Teetor [Doc. 54-1], which describes Guild's extensive, unsuccessful efforts to resolve the matter informally.

**CONCLUSION** – BEW is stonewalling, and reasonable progress of the case is suffering as a result.  For all the reasons set forth in Guild's motion and above, and so that Guild can both prosecute its claims and defend against counterclaims, BEW should be required to produce documents.

        Respectfully submitted,

        /s/ *Scyld D. Anderson*
        J. Stephen Teetor        (0023355)
        *E-mail:  steetor@isaacwiles.com*
        Scyld D. Anderson        (0065062)
        *E-mail:  sanderson@isaacwiles.com*
        ISAAC WILES BURKHOLDER & TEETOR, LLC
        Two Miranova Place, Suite 700
        Columbus, Ohio 43215
        Tel: 614-221-2121; Fax: 614-365-9516
        *Attorneys for Guild Associates, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 20, 2014 a copy of the foregoing was filed electronically in all matters captioned above.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  The parties may access this filing through the Court's system.

        /s/ *Scyld D. Anderson*
        J. Stephen Teetor        (0065062)

2623650.1 : 07439 00001