IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Guild Associates, Inc.,

      Plaintiff,               Case No. 2:13-cv-1041

    v.                      JUDGE GEORGE C. SMITH
                                    Magistrate Judge Kemp

Bio-Energy (Washington) LLC,

      Defendant.

ORDER

This matter is before the Court on several pending motions, including plaintiff Guild Associates, Inc.'s motions to quash subpoenas, for a protective order and to consolidate (ECF No. 16), to compel (Doc. 54), for extension of time (Doc. 59), and for leave to file a surreply (Doc. 74). Also before the Court are defendant Bio-Energy (Washington) LLC's motions to compel (Doc. 24 and Doc. 56), motion to stay (Doc. 42), and motion to seal (Doc. 69). The Court will dispose of these motions as follows.

I. Background

Defendant Bio-Energy owns and operates a landfill gas processing plant at the Cedar Hills landfill in Maple Valley, Washington. This plant processes raw landfill gas into pipeline quality natural gas sold to a local pipeline. In 2007, Guild, at the request of Merichem Chemicals & Refinery Services, LLC, supplied a nitrogen removal unit for use at this plant. The nitrogen removal unit was comprised of four large, steel vessels each fitted with a diffuser basket. A diffuser basket distributes the gas flow over adsorbent media (little pellets) in a way intended to protect the adsorbent material from damage. Guild is the manufacturer of the media. In early October, 2010, the bottom plate of one diffuser basket failed, damaging the

media. Guild's position is that this damage was caused, in whole
or in part, by acid gas which formed due to flaws in Bio-Energy's
system. Specifically, Guild contends that the location of a
"catalytic DeOxo unit" in Bio-Energy's system caused the acid gas
to form. Although Bio-Eenrgy disputes the cause of the failure,
it explains that as a result of the failure, extensive damage
occurred which required the shutdown of Bio-Energy's purification
system in October, 2010 and March, 2011.

In December, 2011, the parties entered into a repair
agreement in which Guild agreed to supply new media and new
baskets. According to Guild, this was conditioned on Bio-
Energy's reconfiguring its overall system to eliminate the cause
of the acidification. Under the agreement, Guild supplied new
diffuser baskets and $2.3 million dollars worth of new adsorbent
media. The repair agreement provided for a series of installment
payments to be made from Bio-Energy to Guild. In the fall of
2013, a dispute arose regarding the performance criteria. As
Bio-Energy sees it, Guild must prove performance. On the other
hand, Guild contends that Bio-Energy is required to prove lack of
performance. This difference of opinion has led to litigation.

Guild filed this case in the Court of Common Pleas of
Franklin County, Ohio. Bio-Energy removed it to this Court.
Additionally, Bio-Energy and its parent company, Ingenco, filed
suit in the United States District Court for the Western District
of Washington against ACE American Insurance Company, Inc.
seeking first-party benefits. See Ingenco Holdings, LLC. v. ACE
American Ins. Co., Case No. 2:13-cv-543 (W.D. Wash.). Guild is
not a party to that case. Further, Bio-Energy filed suit against
Guild in a Washington state court. See Bio-Energy (Washington),
LLC v. Guild Associates, Inc., Superior Court of Washington, King
County, Case No. 13-2-36227-9-SEA. Also pending before this
Court are Case Nos. 2:14-mc-0001, Ingenco Holdings LLC v. ACE

American Ins. Co., Inc. and 2:14-mc-0003, Bio-Energy (Washington) LLC v. Guild Associates, Inc. Case No. 14-mc-0001 was filed by Guild and sought to quash five subpeonas served in connection with the litigation pending in the Western District of Washington. Case No. 14-mc-0003 was filed by Bio-Energy and sought to compel Guild to comply with those subpoenas. These two miscellaneous cases were consolidated by an agreed order dated March 3, 2014.

Guild has sued Bio-Energy in this case seeking payment under the terms of the repair agreement. In its complaint, Guild seeks a declaration of rights and obligations of the parties under the Repair Agreement and a determination as to the cause of the system failure as well as compensatory damages. Bio-Energy has counterclaimed for breach of contract and fraud in the inducement.

II. <u>Bio-Energy's Motion to Stay Discovery</u>

In this motion, Bio-Energy seeks a limited protective order staying discovery relating to the allegations of paragraph 4 of the complaint while its motion for partial judgment on the pleadings is pending. Bio-Energy characterizes the allegations of paragraph 4 of the complaint as Guild's "flawed system design claim." Bio-Energy sets forth several reasons in support of its motion. First, Bio-Energy argues that this Court lacks jurisdiction over the claim for a declaration of the allegedly flawed design of Bio-Energy's as purification system. As Bio-Energy explains, this Court lacks subject matter jurisdiction over a "flawed system design" claim because there is no justiciable controversy between the parties relating to this issue. Further, Bio-Energy asserts that its motion for judgment on the pleadings presents a "convincing argument" that the Court should decline to exercise its discretionary judgment under the Declaratory Judgment Act because adjudication of the "flawed

system design" claim in this case would not settle the parties'
contract-based controversy; because resolution would not serve to
clarify the parties' legal relations; and because Guild is using
the declaratory judgment remedy to gain improper procedural
advantage on this issue when Guild's intervention in the Western
District of Washington case would be a more effective remedy.

Additionally, Bio-Energy asserts that it will be unduly
burdened if it is required to respond to discovery requests
regarding a flawed system design claim unrelated to the
contractual dispute in this case. Bio-Energy argues (without
evidentiary support) that it will experience a significant
financial burden if it is required to comply with discovery
requests directed to this issue. As Bio-energy explains, "the
'flawed system design' claim occupies a very small portion of
this lawsuit, [but] the claim is very complex factually and
implicates a potentially humongous universe of documents." Many
of these documents "may contain confidential information
protected by the patent and trade secret laws" or may be
protected by "the 2007 Non-Disclosure Agreement between Plaintiff
and Defendant and ... will necessitate a thorough review" by
counsel. Also in support of its motion to stay, Bio-Energy
contends, without much elaboration, that Guild will not be
prejudiced by a stay of discovery limited to this claim. Finally,
Bio-Energy argues that Guild's flawed system design claim is
merely an excuse to engage in a fishing expedition to gather
evidence for the defense of a potential subrogation claim by Bio-
Energy's insurer.

In response, Guild argues that the question of system design
flaws is central to this case and that Bio-Energy's motion is an
attempt to limit discovery on a broad range of issues critical to
Guild. It disputes Bio-Energy's characterization of the
allegations of paragraph 4 as setting forth a specific "flawed

system design claim." Rather, as Guild sees it, flaws in the
system are at issue in almost every aspect of the case and
denying discovery as Bio-Energy requests will, in effect, deny
Guild discovery with respect to most of the case. Guild
summarizes its view of its claims, in part, this way:

> Guild supplied certain products and equipment
> pursuant to a Purchase Order issued by Merichem (not a
> party). ... Adsorbent media and diffuser baskets
> supplied by Guild were damaged. Guild believes that
> this damage was caused, in whole or in part, by acid
> gas which formed due to flaws in BEW's System. ...
> Specifically, Guild believes that the location of a
> "catalytic DeOxo unit" in BEW's System caused acid gas
> to form. ... As a result of damage, a Repair Agreement
> was entered into between Guild and BEW, which included
> a provision under which BEW would relocate the DeOxo
> unit.

Additionally, Guild asserts that Bio-Energy's casting its motion
challenging the viability of declaratory relief as
"jurisdictional" is incorrect. Rather, according to Guild, even
if the Court were to conclude that Guild had not alleged facts
sufficient to warrant declaratory relief under the Declaratory
Judgment Act, 28 U.S.C. §2201, the question is still one over
which the Court has subject matter jurisdiction.

Similarly, Guild argues that should the Court, in exercising
its diversity jurisdiction, choose to issue declaratory relief
concerning the causes of the system failure, the issue of the
cause of the system failure is part of nearly every issue in the
case. As explained by Guild, the issue of flawed system design
relates to the reason for damage to the adsordent media and
basket, the relocation of the DeOxo unit, the nature of Bio-
Energy's alternative to using Guild adsorbent and re-locating the
DeOxo unit; whether and why Guild's replacement is performing as
expected; whether and why methane recovery from the system is
reduced; and claimed rights to setoff, indemnity and damges. As
a result, Guild argues that the hardship it will suffer if

discovery is denied is far greater than the burden Bio-Energy will face of responding to proper discovery requests.

Further, Guild contends that it is under no obligation to intervene in the case pending in the Western District of Washington in order to obtain discovery relating to the cause of the system failure. Finally, Guild contends that Bio-Energy's "carefully limited" stay request is vague, overbroad, and unworkable. On another note, Guild asserts, consistent with its pending motion to compel, that Bio-Energy has failed to respond appropriately to interrogatories and has refused to produce the majority of documents which have been requested, contrary to its representations that it has done so.

In reply, Bio-Energy, relying heavily on <u>MacConnell v. Plummer</u>, 2013 WL 3475164 (S.D. Ohio July 10, 2013)(Ovington, M.J.), a 42 U.S.C. §1983 action filed by a pro se former prisoner plaintiff, continues to assert that its motion for judgment on the pleadings raises a jurisdictional issue and, therefore, its proposed stay of discovery is warranted. Further, Bio-Energy explains that this is a breach of contract case involving three primary factual disputes, and the design of the system is not one of them. As Bio-Energy sees it, for purposes of the counterclaim, Guild's liability for damage to the components of the system hinges on the issue of Guild's negligence in supplying or manufacturing the nitrogen removal unit. Further, Bio-Energy contends that Guild had an unconditional contractual duty to re-supply the damaged adsorbent media and other components of the nitrogen removal unit, regardless of how the purification was designed. Again, based on its view of the case, Bio-Energy continues to maintain that Guild will not suffer any hardship from a stay of discovery. Bio-Energy also contends that it has appropriately responded to all discovery requests except for the two requests relating directly to the alleged flawed design of

the system.  Finally, Bio-Energy reiterates its position that it
will be significantly burdened if it is required to respond to
these discovery requests prior to a ruling on its motion for
partial judgment on the pleadings.

## A. Legal Standard

A stay of discovery for any reason is a matter ordinarily
committed to the sound discretion of the trial court.  Chrysler
Corp. v. Fedders Corp.. 643 F.2d 1229 (6th Cir. 1981).  In ruling
upon a motion for stay, the Court is required to weigh the burden
of proceeding with discovery upon the party from whom discovery
is sought against the hardship which would be worked by a denial
of discovery.  Additionally, the Court is required to take into
account any societal interests which are implicated by either
proceeding or postponing discovery.  Marrese v. American Academy
of Orthopedic Surgeons, 706 F.2d 1488, 1493 (7th Cir. 1983).
When a stay, rather than a prohibition, of discovery is sought,
the burden upon the party requesting the stay is less than if he
were requesting a total freedom from discovery.  Id.

However, one argument that is usually deemed insufficient to
support a stay of discovery is that a party intends to file, or
has already filed, a motion to dismiss for failure to state a
claim under Rule 12(b)(6) or motion for judgment on the
pleadings.  As one court has observed,

> The intention of a party to move for judgment on the
> pleadings is not ordinarily sufficient to justify a stay of
> discovery. 4 J. Moore, *Federal Practice* § 26.70[2], at 461.
> Had the Federal Rules contemplated that a motion to dismiss
> under Fed.R.Civ.Pro. 12(b)(6) would stay discovery, the
> Rules would contain a provision to that effect. In fact,
> such a notion is directly at odds with the need for
> expeditious resolution of litigation.... Since motions to
> dismiss are a frequent part of federal practice, this
> provision only makes sense if discovery is not to be stayed
> pending resolution of such motions.  Furthermore, a stay of
> the type requested by defendants, where a party asserts that
> dismissal is likely, would require the court to make a
> preliminary finding of the likelihood of success on the

motion to dismiss. This would circumvent the procedures for
resolution of such a motion. Although it is conceivable that
a stay might be appropriate where the complaint was utterly
frivolous, or filed merely in order to conduct a "fishing
expedition" or for settlement value, cf. Blue Chip Stamps v.
Manor Drug Stores, 421 U.S. 723, 741, 95 S.Ct. 1917, 1928,
44 L.Ed.2d 539 (1975), this is not such a case.

Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N. D. Cal.

1990). See also Turner Broadcasting System, Inc. v. Tracinda

Corp., 175 F.R.D. 554, 556 (D. Nev. 1997) ("a pending Motion to

Dismiss is not ordinarily a situation that in and of itself would

warrant a stay of discovery....").  Thus, unless the motion

raises an issue such as immunity from suit, which would be

substantially vitiated absent a stay, or unless it is patent that

the case lacks merit and will almost certainly be dismissed, a

stay should not ordinarily be granted to a party who has filed a

garden-variety dispositive motion.

B.  Analysis

When applying these principles, the occasions when this

Magistrate Judge has granted such a stay are few and far between.

When the Court has ordered a stay, the circumstances generally

indicated that some preliminary evaluation had been made of the

plaintiff's claims and they had been found wanting, and that any

stay would be short.  See, e.g., Carter v. Wilkinson, 2009 WL

81217 (S.D. Ohio Jan. 9, 2009)(stay ordered where Magistrate

Judge had already issued a report and recommendation on the

dispositive motion and recommended dismissal of the claims

against 25 defendants); Miller v. Countrywide Home Loans, 2010 WL

2246310 (S.D. Ohio June 4, 2010) (stay ordered where many of the

plaintiff's claims had been decided against him in another court

and where the potential for burdensome discovery was great).

Despite the fact that stays of discovery during the pendency

of dispositive motions are rarely granted, the Court does

consider each such motion on its individual merits.  As the Court

-8-

noted in <u>Heartland Jockey Club Ltd. v. Penn National Gaming, Inc.</u>, 2009 WL 5171829, *4 (S.D. Ohio Dec. 21, 2009),

> This Court takes seriously its obligation to manage
> discovery and recognizes that there are cases where the
> plaintiff's claim is so tenuous, and the potential
> injury to either private or societal interests from
> unfettered discovery is so great, that the Court must
> limit or preclude discovery in order to strike the
> proper balance between the competing interests
> involved.

That does not, however, appear to be this case.

Here, although the assigned District Judge will be the one ruling on the motion for partial judgment on the pleadings, and it is not the intent of this order to predict what that ruling might be, it is by no means obvious that the motion will be granted. Consequently, considering only the likelihood that the relief available in this case might be narrowed by a ruling on the motion, this case does not present a situation where a stay is warranted.

The Court views Bio-Energy's motion as simply a variation of the garden variety motion to dismiss. Contrary to Bio-Energy's assertions, its motion does not address the issue of the Court's jurisdiction, but rather the issue of the Court's discretion to exercise jurisdiction. The Declaratory Judgment Act confers broad discretion on the court as to whether to entertain such an action. <u>DigiTrax Entertainment, LLC v. Universal Music Corp.</u>, —F.Supp.2d —, 2014 WL 2002939, *3 (E.D. Tenn. May 15, 2014), <u>citing</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995). Here, Bio-Energy argues that Guild has not established the factors supporting the Court's exercise of its jurisdiction as to this particular declaratory relief request. But that is not the same as an argument that the Court lacks jurisdiction to grant relief - that is, that it is not within the Court's power to grant Guild's request for a declaratory judgment. Bio-Energy is

simply arguing that there are reasons the Court should not do so. That is an appeal to the Court's discretion, and it is not immediately apparent which way the District Judge will see the issue. Granting Bio-Energy's motion to stay under this circumstance would be inconsistent with the principles explained above. Stated another way, if the Court were to find Bio-Energy's motion sufficient to warrant a stay, it would be hard-pressed to imagine a scenario involving declaratory judgments (which are always discretionary) under which a stay of discovery would not be warranted. Moreover, Bio-Energy has provided no evidence in support of its position that this discovery would be unduly burdensome or expensive. Without anything beyond argument, this consideration does not outweigh the need to have this case adjudicated promptly. For all of these reasons, the motion for a stay of discovery will be denied.

### III. Bio-Energy's Motions to Compel (Docs. 24 and 56)

In its first motion to compel, Bio-Energy seeks an order compelling Guild to comply with the initial disclosure requirements under Fed.R.Civ.P. 26(a). According to Bio-Energy, Guild's disclosures are incomplete and evasive and Guild's asserted need for a protective order does not justify the failure to identify and provide non-confidential documents. Bio-Energy also seeks the cost of preparing the motion as a sanction.

In response, Guild argues that the purpose of Rule 26(a) is to expedite production and allow an informed decision regarding the framing of initial document requests. As Guild explains, the Rule does not require identification of documents that a party does not intend to use to support it claims or defenses. Guild contends that Bio-Energy's motion does not serve the purpose of the rule. Guild asserts that Bio-Energy has not had any difficulty framing its production requests. Additionally, Guild argues that, because it has not decided upon which documents it

might eventually use, any description provided by way of an
initial disclosure would be limited to generalities, and given,
the detail of Bio-Energy's document requests, providing a general
description seems futile. Further, Guild contends that it is
working diligently to review and provide documents and that a
protective order is necessary. Guild has attached a copy of a
proposed protective order to its response. Guild has now
supplemented its response stating that it produced 17,905 pages
of documents for all purposes permitted under the Federal Rules.
Further, it stated that it produced these documents on a date
consistent with representations made before Bio-Energy moved to
compel.

In reply to Guild's supplemental response, Bio-Energy argues
that, although it may appear that Guild has complied with its
initial disclosure obligations, there are so many problems with
the electronically stored documents that Bio-Energy has stopped
its review. According to Bio-Energy, these problems include:
pages, which appear to be email attachments, with no Bates
numbers, making them difficult to link with the affiliated email;
out of order pages; email attachments which cannot be opened;
documents labeled as confidential without apparent justification;
and random production of documents with no classification by
subject matter. As a result, Bio-Energy states that it has ended
its review efforts and deleted all electronically stored
information pending a production of documents which complies with
Rule 34(b)(2)(E)(i). Two weeks after the filing of Bio-Energy's
reply, Guild filed a notice regarding its Rule 26(a)(1)
disclosures indicating that it has provided supplemental
disclosures.

Nine days following the filing of Guild's notice, Bio-Energy
filed a second motion to compel. The crux of Bio-Energy's
position, detailed at length in the 23-page motion to compel can

be distilled down to this - Guild "dumped on [Bio-Energy] 34,000 pages of documents that lack any meaningful organization." According to Bio-Energy, Guild has not complied with Rule 34 because it has neither organized or labeled the documents to correspond to the specific document requests nor provided evidence that they were produced as kept in the ordinary course of business.

Much of Bio-Energy's motion can best be characterized as an in-depth play-by-play of the back-and-forth between counsel relating to Guild's document production in what appears to be an attempt to cast Guild's counsel in an unfavorable light. What is apparent from this highly detailed recitation, as well as from the Court's docket, is that there were problems with Guild's initial production, including an inadvertent document production. Guild's counsel filed a notice of inadvertent document production, requested that Bio-Energy comply with the ESI destruction request, filed a remedial plan concerning its document production, and, on April 9, 2014, notified Bio-Energy's counsel that it had reactivated the website and uploaded the responsive documents. Bio-Energy remains unsatisfied with this updated document production and identifies six areas of deficiencies, including:

> (1) Documents were again produced in no logical order and not organized by date or subject matter;
>
> (2) A number of attachments are not associated with their underlying emails or letters;
>
> (3) There are duplicate documents for which it is unclear whether they are from a common source or independent sources;
>
> (4) Many sampled documents are indiscriminately labeled as being subject to the Protective Order in this case without any justification or explanation;
>
> (5) Guild has again failed to provide [Bio-Energy] with

a privilege log setting out the documents that have
been completely withheld, or partially or completely
redacted, and the justification for such action; and

(6) There are gaps in the Bates numbering sequence,
with no explanation of why the gaps exist.

Bio-Energy also contends that Guild has not removed irrelevant
documents.  Bio-Energy has submitted an affidavit from Lorne
Adams, director of engineering for Ingenco, purportedly attesting
to the above deficiencies.

The Court notes that these six alleged deficiencies are the
only deficiencies specifically identified by Bio-Energy as
relating to the updated document production of April 9, 2014.  At
the same time, Bio-Energy's motion is riddled with allegations of
other deficiencies relating to Guild's document production.
However, the motion is particularly unclear as to whether these
alleged additional deficiencies relate to the initial production
or the updated production.  Nevertheless, Bio-Energy requests
sanctions in the form of an award of attorneys' fees incurred in
connection with the filing of this motion.

In Guild's succinct and direct response, Guild contends that
a plain reading of Rule 34 indicates that requested information
can be presented in one of two ways - as it is kept in the usual
course of business or organized and labeled to correspond to
categories in the request.  As Guild explains, if documents are
produced as kept in the usual course of business, Rule 34 imposes
no duty to organize and label.  Guild asserts that it produced
documents as kept in the usual course of business.  In support of
its position, Guild provided affidavits from its vice-president
Wayne Ballantyne and its counsel, Scyld Anderson.  According to
Guild's counsel, the documents as produced "fairly comport with
... both custom and rule."  <u>See</u> Affidavit of Scyld Anderson, Doc.
65-2, ¶7.  More specifically, Guild summarized the content of Mr.
Anderson's affidavit relating to the document production process,

as follows:

> [D]ocuments kept by individuals at Guild who were
> involved with the project were gathered into source-
> specific folders containing emails, electronically
> stored files, and scanned files. After review for
> privilege and confidentiality, they were converted to
> .pdf format for Bates-stamping. Files from the same
> sources remained grouped together. Attachments to
> emails were kept in the same production files as the
> source emails. Filenames within production files were
> bookmarked and were automatically alphabetized by the
> computer for ease of reference. The documents
> themselves are text-searchable .pdfs.

Further, Mr. Ballantyne states in his affidavit:

> Guild's CEO directed Guild employees known to be involved
> with the System, to gather their files. Emails and
> electronic files for each individual were collected from
> computers and placed into electronic folders. Hardcopy
> documents for each individual were scanned and were placed
> into electronic folders. The folders were, in essence, a
> collection of each employee's documents as they were kept in
> the usual course of Guild's business.

Ballantyne Affidavit (Doc. 65-1), ¶4.

Finally, Guild's response addresses some of the play-by-play
set forth at great length by Bio-Energy. Of note is Guild's
explanation that duplicate copies exist because the same document
was stored by more than one employee, where hard-copies with
hand-writing were scanned text-searching is only marginally
effective, and any gaps in Bates-numbering are inadvertent and do
not impact compliance with the rule. Guild also argues that Bio-
Energy's complaint that too many documents are marked
"confidential" is a red herring. As Guild sees it, if Bio-Energy
had a specific concern with respect to a specific document, it is
free to address that concern in accordance with the standard
procedures for challenging a claim of confidentiality.

In its 22-page reply, Bio-Energy reiterates all of the
deficiencies it believes are apparent in Guild's response, and

continues to insist Guild has provided no evidence that the
documents were produced as kept in the usual course of business.
Bio-Energy cites to multiple cases for examples of organizational
efforts that Guild should have undertaken here but did not.  For
example, relying heavily on Valeo Electrical Systems, Inc. v.
Cleveland Die & Mfg. Co., 2009 WL 1803216 (E.D. Mich. June 17,
2009), Bio-Energy contends that

> ... Guild has uploaded the documents and ESI to the
> review website as one giant mass of files and scanned
> pages, without placing the documents into folders
> organized by the names of the documents' custodians and
> structured in at least some chronological order.  Many
> pages of the produced documents contain handwritten
> notes as to which there is no identification of the
> author of the note, the original storage source of the
> note, or the date when the note was either created or
> originally stored.  The majority of the email
> attachments produced by Guild are not associated with
> the emails to which they attachments are related.
> Moreover, the emails and attachments to those emails
> are not placed in folders organized by the name of the
> person from whose computer the emails and the
> attachments were retrieved, nor has Guild uploaded the
> emails to the review website in any discernible
> chronological order.  Overall, the produced documents
> are not organized by either the name of the documents'
> original custodian, or by some other source.
> Furthermore, for non-email ESI, Guild has not produced
> each file by custodian and by the file's location on
> the hard drive, such as, directory, subdirectory, and
> the file's name.

See Reply (Doc. 68), pp. 12-13.  Because, according to Bio-
Energy, Guild has not produced the documents as they were kept in
the usual course of business, Bio-Energy requests that the Court
order Guild to organize and label the documents that Guild has
already produced so that the documents correspond to each
specific production request.  Bio-Energy has provided affidavits
from its counsel Robert Rauch, and David Palumbo, senior vice
president of development of Ingenco, in support of its position.

Although the bulk of Bio-Energy's reply re-examines the

numerous alleged deficiencies of Guild's production, Bio-Energy
admits that it has been able to undertake "[a] full and complete
review of the more than 34,000 pages documents and ESI produced
by Guild...." Based on this completed review, Bio-Energy argues
that only 55 files are relevant and responsive, but several of
these have references to attachments which Guild has failed to
produce. According to Mr. Palumbo's affidavit, he has personally
reviewed all 34,456 pages of documents produced by Guild and has
identified "fewer than 100 files that are responsive and relevant
...." See Palumbo Affidavit (Doc. 68-1) ¶5. As a result, Bio-
Energy asserts that Guild has not produced documents essential to
the claims and counterclaims as requested by Bio-Energy.
Specifically, Bio-Energy contends that Guild has not produced the
following documents which Bio-Energy has "good reason to believe
exist:"

> (a) Documents containing detailed specifications,
> purchase orders, and quantities for the original
> adsorbent media that Guild supplied pursuant to an
> agreement with Merichem Company, which were demanded in
> [Bio-Energy's] request for production No. 10;
>
> (b) Documents containing detailed specifications
> for the replacement adsorbent media that Guild supplied
> to [Bio-Energy] following the October 1, 2010 diffuser
> basket's failure in vessel 32 of the NRU, which
> documents were demanded in [Bio-Energy's] request for
> production No. 11;
>
> c) Documents containing detailed specifications
> for the adsorbent media that Guild supplied to [Bio-
> Energy] under the 2011 Repair Agreement, which were
> demanded in [Bio-Energy's] request for production No.
> 12;
>
> (d) Documents pertinent to Guild's performance of
> its obligations under the 2011 Repair Agreement, which
> should have included documents related to the
> completion of Dr. William Dolan's responsibilities to
> [Bio-Energy] under Section 3 of the Repair Agreement,
> all of which were demanded in [Bio-Energy's] request
> for production No. 21; and

      (e) Documents supporting Guild's "acidified gas"
    theory that Guild alleged in Paragraph 4 of its
    Complaint, which were demanded in [Bio-Energy's]
    request for production No. 17.

See Palumbo Affidavit(Doc. 68-1) ¶7.

    Further, Bio-Energy contends that its review reveals that
large portions of various emails have been redacted without
explanation and without a privilege log. Finally, Bio-Energy
again seeks sanctions in the form of an award of attorneys' fees
incurred in connection with the filing of the motion to compel.

    On June 10, 2014, Guild filed an unopposed motion for leave
to file a surreply. This motion will be granted. According to
its surreply, Guild provided a privilege log to Bio-Energy,
despite Bio-Energy's numerous representations to the contrary.

B. <u>Analysis</u>

    Initially, the Court finds that Bio-Energy's first motion to
compel is moot for two reasons. First, following the filing of
Bio-Energy's reply, Guild filed a notice that it provided a
supplemental initial disclosure. Further, to the extent that
Bio-Energy's original motion to compel was driven by its
dissatisfaction with the way in which the information was
produced, the Court views this issue as subsumed by the filing of
its second motion to compel.

    Turning to the second motion to compel, a party's
responsibility under Rule 34 has been explained as follows:

      Under Rule 34(b)(2)(E)(i), a responding party may
    either produce documents "as they are kept in the usual
    course of business" or "organize them to correspond to
    the categories in the request." This rule is designed
    to give structure to the production thereby minimizing
    the risk of confusion. <u>Johnson v. Kraft Foods N.A.,
    Inc.</u>, 236 F.R.D. 535, 540 (D. Kan. 2006). Where the
    responding party chooses to produce the documents as
    they are kept in the ususal course of business, it is
    the responding party that bears the burden of
    establishing that the documents were actually produced
    as they were kept in the ordinary course of business.

> See, e.g., United States v. Briggs, 831 F.Supp.2d 623,
> 629 (W.D.N.Y. 2011). To carry this burden, a
> responding party must do more than merely assert that
> it produced documents as they were maintained in the
> ordinary course. See, e.g., Johnson, 236 F.R.D. at
> 540-41. Once the documents are produced as they are
> kept in the ordinary course of business "Rule 34
> imposes no further duty to organize and label the
> documents to correlate to the particular request to
> which they are responsive." FDIC v. Cuttle, 2012 WL
> 5990284 (E.D. Mich. Nov. 30, 2012).

Little Hocking Water Assn., Inc. v. E.I. DuPont De Nemours & Co.,
2013 WL 608154, *54 (S.D. Ohio Feb. 19, 2013).

The only take-away from Bio-Energy's nearly 60 pages of
briefing is that it is, to say the least, wholly displeased with
Guild's decision to select the first option under Rule 34 of
producing the documents as kept in the usual course of business.
Clearly, and not surprisingly, Bio-Energy's preference was for
Guild to produce the documents organized and labeled and
correlated to a specific request. This is so clearly Bio-
Energy's preference that it suggests that the only solution to
Guild's allegedly unsatisfactory document production under the
usual course of business method is an order from this Court
directing Guild to produce the documents labeled and organized in
accordance with its document request. Bio-Energy does not seem
to consider that, were the Court to conclude that Guild had not
met its burden on the issue, another solution would be to require
Guild to present more information about how and where the
documents were maintained in the ordinary course of business.
Instead, Bio-Energy appears bent on using its motion to compel as
a means to force Guild's compliance with the second option of
Rule 34(b)(2)(E)(i). Further, Bio-Energy's painstaking
recitation of every perceived transgression allegedly committed
by Guild or its counsel in connection with the document
production provides a punitive tone to the insistence that Guild

now be required to label and organize.  The Court, however, is
not persuaded in any way by Bio-Energy's arguments.
Consequently, the motion to compel, to the extent that it seeks
an order directing Guild to organize and label, will be denied.

This is so for two primary reasons.  First, the Court finds
that Guild has provided sufficient evidence that its documents
were produced as kept in the usual course of business.  In stark
contrast to Bio-Energy's portrayal of Guild's production as a
chaotic heap of disorganization, the affidavits presented by
Guild indicate otherwise.  For example, both Mr. Ballantyne and
Mr. Anderson explain that the electronic folders provided are a
collection of each employee's documents as they are kept in the
usual course of business.  Further, Mr. Anderson's affidavit
specifically details the organizational methods utilized in the
document production.

Based on this explanation, it seems that Guild provided
structure to its production with the goal of minimizing the risk
of confusion - the very purpose of Rule 34(b)(2)(E)(i).
Significantly, that Guild complied with the purpose of the Rule
seems to be borne out by Bio-Energy's acknowledgment in its reply
that it was able to undertake a full and complete review of the
documents. However, to the extent that Guild did not provide to
Bio-Energy, as part of the document production (and the Court
really cannot tell if it did so or not) the type of
organizational information described in Mr. Anderson's affidavit
- that is, the identity of the individuals whose emails and hard-
copy documents were uploaded into each folder - it should, of
course, do so.  Guild does not have any obligation separately to
identify the authors of any handwritten notes, however, at least
as part of a document production, so long as it has informed Bio-
Energy of the source from which it obtained any documents which
have such notes on them.

After it completed its review, Bio-Energy included, as part of its reply, a listing of categories of documents which it believes to be missing from the production. In that reply, it requests an order compelling Guild to produce these "missing" documents. However, because Bio-Energy has raised the issue of missing documents by way of reply, Guild has not had the opportunity to address this argument. It is well-settled that arguments raised for the first time in a reply brief are properly disregarded, Scottsdale Ins. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008), and that is especially true in the context of discovery motions because of the meet-and-confer requirement. Consequently, the motion to compel will be denied to the extent that it seeks an order directing Guild to produce certain identified categories of documents (but the parties should meet and confer on this issue if they have not done so already).

The final subject of Bio-Energy's motion to compel is a privilege log. As noted above, Guild has represented, without opposition, that it has now provided a privilege log to counsel for Bio-Energy. Consequently, the motion to compel will be denied as to this issue. Because the Court has not granted any relief on the motion to compel, there is no basis for an award of sanctions.

IV. Guild's Motion to Compel

Guild's short motion to compel, consistent with assertions made in connection with the motion to stay, seeks an order directing Bio-Energy to produce documents related to the issue of system failure. Without these documents Guild argues, depositions cannot begin.

In its 23-page response, which totals 107 pages with attachments, Bio-Energy essentially makes only two arguments - that the only documents it has refused to produce are the focus of its motion to stay (those relating to paragraph 4 of Guild's

complaint) and that Guild's counsel violated its duty to meet and
confer prior to filing the motion to compel.  Much of Bio-
Energy's response is dedicated to explaining how Guild' motion is
procedurally improper because it addresses issues more properly
raised in response to Bio-Energy's motion for a stay.

With respect to the documents which are the focus of the
motion to stay, Bio-Energy reiterates its arguments about the
shortcomings of Guild's own document production, and also claims
that these documents do not support the allegations of paragraph
4 of Guild's complaint.  Bio-Energy provided another affidavit
from David Palumbo detailing these shortcomings.  Further, Bio-
Energy contends (although not very clearly) that even if Guild
could prove the allegations of paragraph 4 of its complaint,
these documents are not relevant to Guild's defense of Bio-
Energy's counterclaim.  According to Bio-Energy, the issue of
Guild's negligence as alleged in the counterclaim and the issue
of the propriety of the system design raised in Guild's complaint
are independent of each other.

In reply, Guild details more specifically twelve categories
of information about which Bio-Energy has not provided responsive
documents.  Guild notes that Bio-Energy did not even produce the
scientific reports relied on by Mr. Palumbo in his affidavit.
According to Guild, many of the items it has identified are
relevant to Guild's initial claims and many are relevant to its
counterclaim defense.  Guild contends that Bio-Energy's argument
that Guild has not proven that the system was damaged by gas and,
therefore, Guild is not entitled to discovery on the issue fails
to recognize that Bio-Energy's disagreement with Guild's theory
of the case does not foreclose discovery.  Further, Guild argues
that the issues of acid and system conditions are central to its
defense of the counterclaims.

A.  Legal Standard

-21-

The general principles involving the proper scope of discovery are well known. The Federal Rules of Civil Procedure authorize extremely broad discovery. United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976), cert. denied 430 U.S. 945 (1977). Therefore, Fed.R.Civ.P. 26 is to be liberally construed in favor of allowing discovery. Dunn v. Midwestern Indemnity, 88 F.R.D. 191 (S.D.Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. The concept of relevance during discovery is necessarily broader than at trial, Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because if the information were introduced at trial, it would be 'speculative' at best." Coleman v. American Red Cross, 23 F.3d 1091, 1097 (6th Cir. 1994).

Information subject to disclosure during discovery need not relate directly to the merits of the claims or defenses of the parties. Rather, it may also relate to any of the myriad of fact-oriented issues that arise in connection with those claims or defenses. See generally Oppenheimer Fund, Inc. v. Sanders, 437 U.S.340 (1978). On the other hand, the Court has the duty todeny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. See Herbert v. Lando, 441 U.S. 153 (1979). Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the

benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources.  See Fed.R.Civ.P. 26(b)(2).  Finally, the Court notes that the scope of permissible discovery which can be conducted without leave of court has been narrowed somewhat by the December 1, 2000 amendments to the Federal Rules.  Rule 26(b) now permits discovery to be had without leave of court if that discovery "is relevant to the claim or defense of any party ...."  Upon a showing of good cause, however, the Court may permit broader discovery of matters "relevant to the subject matter involved in the action."  Id.

## B.  Analysis

Turning first to the issue of meet and confer, the Court finds that Guild sufficiently demonstrated its efforts to address the issue of this motion extra-judicially.  The affidavit from its counsel, J. Stephen Teetor, provides evidence of these efforts.  Consequently, the motion to compel will not be denied on this ground.

Turning to the more substantive issue at hand, to the extent that Bio-Energy relies on its pending motion for judgment on the pleadings as grounds for withholding discovery, this order, in denying Bio-Energy's motion to stay, resolves that issue.  To the extent that Bio-Energy argues that the documents Guild seeks are not relevant, the Court does not agree.

There is no question that Guild, as the proponent of a motion to compel discovery, bears the initial burden of proving that information sought is relevant.  Guinn v. Mount Carmel Health Systems, 2010 WL 2927254, *5 (S.D. Ohio July 23, 2010).  Here, it appears that Guild has met its initial burden.  For example, Guild contends that certain requests are directed to information relevant to all aspects of the case including: (1)

information relating to run data showing information about gas composition, flow rates, pressures, performance and outputs both before and after the re-configuration of the system; (2) monitoring data of the nitrogen removal unit and the overall system; and (3) results of attempts to determine performance of the replacement media. Further, Guild argues that other requested information is relevant to Guild's defense of Bio-Energy's counterclaim including third-parties' responses to problems with the system overall and the nitrogen removal unit specifically, and third-parties' alternatives to Guild's products considered by Bio-Energy. Guild also contends that information relating to the settlement with Merichem is relevant to the counterclaim and the issue of set-off. Additionally, Guild asserts that information regarding aspects of the system, other than components supplied by Guild, which could impact the system's overall output and performance and financial income and expense information are relevant to Bio-Energy's damage claims.

Guild also maintains that certain information is relevant to certain fact-oriented issues. Specifically, Guild cites information relating to the feed gas stream entering Guild's nitrogen removal unit as relevant to the effects of the gas on the adsorbent media. Further, Guild notes Bio-Energy's response to acidification as relevant to the existence and amount of acid in the system. Additionally, Guild argues that the issue of moisture in the system is relevant to the Bio-Energy's claim that insufficient moisture was present. Guild also notes that Bio-Energy has not provided the data and documents underlying its experts' opinions.

Bio-Energy has not come forward with a specific challenge to the relevance of any of these requested documents, other than its general objection to providing responses in light of its motion for partial judgment on the pleadings. Absent a more targeted

objection to a specific request, the Court has no basis upon
which to conclude that Guild has not met its burden of
demonstrating relevance.  Consequently, Bio-Energy will be
directed to produce all documents it has not produced on the
basis of its motion to stay.

V.   Guild's Motion to Quash Subpoenas, for a Protective Order and
                to Consolidate (Doc. 16)

Guild filed a motion seeking to quash subpoenas issued in
the case pending in the Western District of Washington and a
corresponding motion for a protective order contending, inter
alia, that the depositions of Guild witnesses should take place
in the normal discovery course in this case and after the
witnesses have had the benefit of full document production.
According to the motion, the depositions had been scheduled for
December, 2013 but postponed until January 13, 2014 to allow the
Court to review the issue.  Because the issues raised by Guild in
its motion have been addressed to some extent in this order, and
because the time for the depositions has passed, Guild's motion
will be denied as moot to the extent it seeks to have subpoenas
quashed and a protective order issued.

In its motion, Guild also seeks the consolidation of this
case with Case No. 2:14-mc-001, the miscellaneous case in which
Guild filed the same motion to quash as it filed here.  As noted
above, Case No. 2:14-mc-001 was consolidated with Case No. 2:14-
mc-003, the miscellaneous case in which Bio-Energy moved to
compel compliance with its subpoenas.  It is not the practice of
this Court to consolidate miscellaneous and civil cases.
However, to the extent that Guild was seeking assignment of the
cases to the same District Judge and Magistrate Judge, as evident
from the Court's docket, this purpose has been accomplished by
the Court's designation of these cases as related.  Consequently,
Guild's motion will be denied as moot to the extent it requests
consolidation.

VI.  <u>Remaining Motions</u>

Two additional motions are pending before the Court - a
motion to seal declarations in support of a reply filed by Bio-
Energy and Guild's motion for an extension of time to disclose
experts.

The purpose of the motion to seal is to correct Bio-Energy's
filing of approximately 20 documents designated by Guild as
"confidential - subject to protective order" which Bio-Energy
filed on the public record as exhibits to declarations of David
Palumbo and Robert Rauch in support of its motion to compel.
Although in its eight-page motion to seal Bio-Energy protests the
designation, it seeks to cure the filing error.  Refreshingly,
in its filed response, Guild does not oppose the motion, although
its consent could not be offered without comment.  Nevertheless,
the motion is unopposed and will, therefore, be granted.

In its motion for extension, Guild seeks an extension of the
expert disclosure deadline, citing the well-documented and
contentious turn the course of discovery has taken in this case.
In a 19-page response, Bio-Energy opposes that motion.  Guild has
filed a reply.

Fed.R.Civ.P. 16(b) requires the Court, in each civil action
which is not exempt from that rule, to enter a scheduling order
which limits the time to, <u>inter alia</u>, file motions, identify
expert witnesses, and complete discovery.  The rule further
provides that "[a] schedule may be modified only for good cause
...."

Although the Court has broad discretion to modify its own
pretrial orders, it must be remembered that "[a]dherence to
reasonable deadlines is ... critical to maintaining integrity in
court proceedings," <u>Rouse v. Farmers State Bank</u>, 866 F.Supp.
1191, 1199 (N.D. Iowa 1994), and that pretrial scheduling orders
are "the essential mechanism for cases becoming trial-ready in an

efficient, just, and certain manner." <u>Id</u>. at 1198.  In
evaluating whether the party seeking modification of a pretrial
scheduling order has demonstrated good cause, the Court is
mindful that "[t]he party seeking an extension must show that
despite due diligence it could not have reasonably met the
scheduled deadlines." <u>Deghand v. Wal-Mart Stores</u>, 904 F.Supp.
1218, 1221 (D. Kan. 1995).  The focus is primarily upon the
diligence of the movant; the absence of prejudice to the opposing
party is not equivalent to a showing of good cause.  <u>Tschantz v.
McCann</u>, 160 F.R.D. 568, 571 (N.D. Ind. 1995).  Of course,
"[c]arelessness is not compatible with a finding of diligence and
offers no reason for a grant of relief." <u>Dilmer Oil Co. v.
Federated Mut. Ins. Co.</u>, 986 F.Supp. 959, 980 (D.S.C. 1997).
Further, although the primary focus of the inquiry is upon the
moving party's diligence, the presence or absence of prejudice to
the other party or parties is a factor to be considered.  <u>Inge v.
Rock Financial Corp.</u>, 281 F.3d 613 (6th Cir. 2002).  The Court of
Appeals has made it clear that this standard applies to any
deadline set in a Rule 16 order, such as a date by which motions
to amend the pleadings must be made (<u>see Inge, supra</u>), a
discovery cutoff date (<u>see Commerce Benefits Group v. McKesson
Corp.</u>, 326 Fed. Appx. 2369 (6th Cir. May 20, 2009)), or a date
for filing summary judgment motions (<u>see Andretti v. Borla
Performance Industries</u>, 426 F.3d 824 (6th Cir. 2005)).  It is
with these standards in mind that Guild's motion will be decided.

In its brief, Bio-Energy raises nothing new as grounds for
denial of this motion that it has not raised repeatedly in
connection with the various motions set forth above.  The Court
remains unpersuaded by Bio-Energy's efforts.  As Guild notes in
its motion, this case involves technical issues and the parties
have been unable to proceed smoothly with their discovery
efforts.  Further, based on the explanation detailed in Guild's

motion, the Court is satisfied that Guild has been diligent in
its efforts to meet the expert disclosure deadline.  Guild's
explanation demonstrates that, despite its efforts, for reasons
which are consistent with the filings in this case and well-
reflected on the Court's docket, Guild was unable to meet the
deadline.  For these reasons, the Court finds that Guild has set
forth good cause for an extension of the expert disclosure
deadline and its motion will be granted.  The new expert
disclosure deadline is August 1, 2014.

## VII.  <u>Order</u>

For the reasons stated above, the motion to quash (Doc.
16) is denied as moot.  Bio-Energy's motion to stay discovery
(Doc. 42) is denied.  Bio-Energy's motions to compel (ECF Nos.
24 and 56) are denied.  Guild's motion to compel (Doc. 54) is
granted.   Bio-Energy shall produce the documents withheld on
the basis of its motion to stay within fourteen days.  Guild's
unopposed motion for leave to file a surreply (Doc. 74) is
granted.  Bio-Energy's motion to seal declarations (Doc. 69) is
granted.  Guild's motion for an extension of time (Doc. 59) is
granted.  The new expert discovery deadline is August 1, 2014.

## <u>APPEAL PROCEDURE</u>

Any party may, within fourteen days after this Order is
filed, file and serve on the opposing party a motion for
reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),
Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01,
pt. IV(C)(3)(a).  The motion must specifically designate the
order or part in question and the basis for any objection.
Responses to objections are due fourteen days after objections
are filed and replies by the objecting party are due seven days
thereafter.  The District Judge, upon consideration of the
motion, shall set aside any part of this Order found to be

clearly erroneous or contrary to law.

     This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

                  /s/  Terence P. Kemp
                  United States Magistrate Judge