IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Guild Associates, Inc.,

       Plaintiff,                Case No. 2:13-cv-1041

    v.                      JUDGE MICHAEL H. WATSON
                                  Magistrate Judge Kemp

Bio-Energy (Washington) LLC,

       Defendant.

ORDER

    This matter is before the Court on defendant Bio-Energy
(Washington), LLC's motion to compel Guild Associates, Inc. to
produce missing, withheld, and un-redacted documents.  Guild has
filed a response and the motion has been fully briefed.  Guild's
response includes a motion for a protective order.  Also before
the Court is Guild's motion to exclude certain witnesses.  This
motion also has been fully briefed.  Many of the issues raised by
these motions have been addressed by the Court either during the
omnibus discovery hearing held on January 14, 2015, or in the
order memorializing that hearing.  The purpose of this order is
to address any remaining issues raised by these motions and the
Court does so as follows.

I.  The Motion to Compel

     Originally, through its motion to compel, Bio-Energy sought
an order directing Guild to produce eight categories of documents
in response to Bio-Energy's first request for production.
Specifically, Bio-Energy asserted that Guild had failed to
respond to production request numbers 9-12, 14, 17, 21-23 and 28-
31.  Bio-Energy categorized the groups of unproduced documents as
follows:

    1.  Purchase Orders in connection with the following:

        (a)  Original Molecular Gate raw material ("green

           beads");

    (b)  Denstone supplied after the first failure of the NRU in the summer of 2009;

    (c)  Denstone supplied after the Parties' execution of the Agreement for the Repair, Re-Configuration and Re-Commissioning of the Nitrogen Removal System at the Cedar Hills Landfill, dated December 7, 2011 ("Repair Agreement");

    (d)  Bed foam installed in 2009 after the first NRU failure;

    (e)  Testing of molecular gate media by third parties, including the suppliers of "green beads."

2.    A list of all "green beads" suppliers.

3.    An un-redacted copy of any fully executed license agreement between Guild and BASF Group.

4.    Calculations of flow into, and out of, the NRU vessels, as required by the 2011 Repair Agreement.

5.    Quality Assurance and Control procedures, including acceptance test methods.

6.    The un-redacted documents concerning the results of tests performed on all molecular gate material supplied by Guild to BEW, including the original molecular gate media supplied to Merichem, the 6700 pounds of "make up" media supplied in the fall of 2009, the additional medial supplied after the diffuser basket failure in October 2010, and the complete re-fill of medial supplied under the 2011 Repair Agreement, including, with respect to the foregoing:

    (a)  Any XRF or XRD measurements;
    (b)  Crush strength tests;
    (c)  Elemental composition tests and determinations; and
    (d)  Adsorption performance tests.

7.    Design calculations for the new diffuser baskets supplied by Guild (the ones that are currently being used at BEW's gas processing plant and the replacement baskets that Guild wants BEW to install).

8.   Contact information for Guild's customers, other
     than BEW.

Bio-Energy explained that Guild claimed that it was unable
to locate the documents referred to in paragraphs 1(a)-(d).
Further, according to Bio-Energy, with respect to paragraph 1(e),
Guild asserted that no third party laboratories performed tests
on the media.  Further, Bio-Energy states that Guild has produced
some supplier information but has not produced information
relating to up to four separate suppliers of green beads
requested in paragraph 2.  Additionally, Bio-Energy maintains
that Guild has claimed confidentiality with respect to the
information requested in paragraphs 4 through 6.  Bio-Energy also
asserts that, with respect to the information requested in
paragraph 7, Guild refuses to admit that it designed the diffuser
baskets.  Finally, Bio-Energy contends that with respect to the
information requested in paragraph 8, Guild has provided only its
customers' names but not any contact information.

Bio-Energy further contended that many of the documents
produced were heavily and improperly redacted.  Finally, Bio-
Energy argued that Guild's privilege logs dated August 19, 2014
and October 9, 2014, are "legally invalid 'cryptic privilege
logs.'"

Much of the hearing was devoted to the issues of
confidentiality and trade secret information.  In the order
memorializing the discovery hearing, the Court addressed these
issues and concluded that documents were properly withheld on
trade secret grounds.  Consequently, that order resolved the
motion to compel with respect to the information requested in
paragraphs four through six.  The Court will now turn to the
remaining categories of documents.  For the reasons explained
below, the motion to compel will be denied with respect to these
categories.

-3-

Turning to the first category of documents, David Church, a service manager for Guild, testified at the hearing that he was unable to locate any additional responsive documents despite having made a good faith effort to do so.  Turning to the second category of documents, Mr. Church testified that Guild only controls one manufacturer of green beads and that any additional suppliers of green beads would have been retained by BASF.  Bio-Energy presented no evidence to the contrary.  Consequently, the Court accepts as factual Mr. Church's testimony that no additional documents responsive to these categories of documents exist.

With respect to Bio-Energy's request for an unredacted copy of the license agreement between Guild and BASF, the Court has reviewed the redacted copy produced by Guild and concludes that the redactions were appropriate.

As for the information relating to the design calculations for new baskets, Mr. Church testified that the new baskets were designed by Bio-Energy.  Bio-Energy presented no evidence to the contrary.  Consequently, the Court finds as factual Mr. Church's testimony that Bio-Energy designed these baskets and, therefore, Guild has no design calculations responsive to paragraph seven.

With respect to the contact information for Guild's customers requested in paragraph eight, Mr. Church testified, and Bio-Energy acknowledges in its motion, that Guild informed Bio-Energy of its customers some time ago.  Bio-Energy has provided no explanation as to why specific contact information in addition to the identification of Guild's customers is necessary. Further, Bio-Energy has provided no evidence of its efforts to uncover contact information once Guild identified its customers, including any difficulty Bio-Energy encountered in doing so. Absent such a showing by Bio-Energy, the Court is not persuaded that Bio-Energy needs specific contact information for the

-4-

customers Guild has identified.

Finally, turning to the issue of the sufficiency of the privilege logs, as noted in the order memorializing the discovery hearing, the Court found Guild's descriptions of withheld documents sufficient and accurate.

## II.  The Motion to Exclude Witnesses

Guild has moved to exclude James Ritter, Kent Knaebel, and Matthew Schneider from testifying as witnesses for Bio-Energy. The basis for this motion according to Guild is that, during the depositions of these individuals, Bio-Energy repeatedly instructed them not to answer questions regarding "what they know, what they have been told, and facts bearing upon their own credibility."  As Guild explains, Dr. Ritter and Dr. Knaebel are fact witnesses who have been hired by Bio-Energy as experts. Guild asserts that, with respect to Mr. Schneider, Bio-Energy's plant engineer, Bio-Energy is "trying to conceal facts by belately (sic) labeling him an 'expert.'" Guild seeks an order preventing Dr. Knaebel and Dr. Ritter from testifying at trial. With respect to Mr. Schneider, however, Guild requests that Bio-Energy be prevented from calling him as a witness but wishes to reserve the right to call him itself.  Alternatively, Guild requests that these witnesses be ordered to appear for deposition in Ohio at Bio-Energy's expense.

In response, Bio-Energy claims that Guild has failed to acknowledge a prior agreement to limit the initial depositions of Drs. Ritter and Knaebel to the substance of their expert reports. With respect to Mr. Schneider, Bio-Energy argues that it has not designated him as a testifying expert and, therefore, under Fed.R.Civ.P. 26(b)(4)(D), it was proper for counsel to instruct him not to answer questions about facts he learned and opinions he formed in the course of his litigation-related work for Bio-Energy.  Simply stated, Bio-Energy  contends that Guild's motion

-5-

is without legal basis.  Bio-Energy also questions Guild's motive in waiting to file this motion until six months after the depositions of Drs. Ritter and Knaebel.

In reply, Guild denies agreeing to limitations on the deposition topics.  Further, Guild explains that it was never informed of Mr. Schneider's role until it received Bio-Energy's response to the current motion.  Regardless, Guild argues, Mr. Schneider's role as a consulting expert does not prevent him from testifying as to his personal knowledge of particular facts.

Guild's request to exclude witnesses merits little discussion.  As Bio-Energy notes, the sanction of excluding testimony is considered drastic.  Freeland v. Amigo, 103 F.3d 1271, 1280 (6th Cir. 1997).  Guild does not attempt seriously to persuade the Court, by either argument or citation to authority, that the situation presented here merits such a sanction.  The real question then is whether these individuals should be required to appear in Ohio for further deposition and at which party's expense.

Turning first to Drs. Ritter and Knaebel, Bio-Energy's response does not address this issue, being devoted exclusively to the issue of exclusion.  Further, the Court notes two things. First, the language of Bio-Energy's response indicates an expectation of further depositions of these individuals. Additionally, the Court does not read the email chain between counsel as establishing any agreed upon limitation of deposition topics.  In light of this, and considering Bio-Energy's failure to mount any argument to the contrary, the Court will direct Drs. Ritter and Knaebel to appear in Ohio for further deposition.

With respect to Mr. Schneider, it is not clear from Guild's reply the extent to which Guild continues to consider a further deposition of this witness necessary.  It may be that, given its current understanding that Mr. Schneider has been retained as a

-6-

consulting expert, Guild has re-evaluated the need to further depose Mr. Schneider.  However, Guild is correct that Mr. Schneider's designation as a consulting expert does not prevent him from testifying to facts about which he has personal knowledge.  Nevertheless, it may well be that the scope of additional questions directed to Mr. Schneider has been sufficiently narrowed so as not to justify an order directing him to appear in Ohio for deposition.  Consequently, the Court will direct Guild, to the extent Guild believes that further deposition of Mr. Schneider is necessary, to consider more economically responsible options.  In the event a less costly alternative cannot be agreed upon, Guild may seek the assistance of the Court.

With respect to Guild's request for Bio-Energy to be required to bear the costs of the additional depositions, the Court finds that the more reasonable approach is for the parties to split the cost.

### III.  Conclusion

For the reasons set forth above, the motion to compel (Doc. 115) is denied.  Guild's motion for a protective order (Doc. 124) is denied as moot.  The motion to exclude witnesses (Doc. 128) is granted in part and denied in part as set forth above.

### V.  Motions for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the

motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

    This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.


                                    Terence P. Kemp
                                    United States Magistrate Judge