```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Guild Associates, Inc.,

        Plaintiff,                      Case No. 2:13-cv-1041

    v.                               JUDGE MICHAEL H. WATSON
                                       Magistrate Judge Kemp

Bio-Energy (Washington) LLC,

        Defendant.

## ORDER

This matter is before the Court on defendant Bio-Energy (Washington), LLC's motion to compel plaintiff Guild Associates, Inc. to remove the "for attorneys' eyes only" designation from financial documents produced in response to a previous order of this Court. Guild has responded and the motion has been fully briefed. For the following reasons, the motion to compel will be granted.

### I. The Motion to Compel

Through its motion to compel, Bio-Energy seeks an order directing Guild to remove the AEO designation from the tax returns and financial statements that Guild produced to Bio-Energy. Bio-Energy contends that there is no legal justification for the designation and Guild has not met its burden of demonstrating with specificity that a broader disclosure of these documents will result in "material, competitive harm" or "other specifically articulable injury" to Guild as required by the amended protective order and applicable law.

According to Bio-Energy, it has requested that Guild change the documents' designation to "Confidential – Subject to Protective Order" and this request was met with Guild's question as to why Bio-Energy needs to see these documents. Bio-Energy contends that this response is wholly insufficient to meet the

very strict standard for maintaining an AEO designation.  Bio-Energy relies on two opinions from this Court which it contends recognize that the designating party bears the burden of specifically supporting an AEO designation with concrete examples of material competitive harm.  Bio-Energy points out that, in both these cases, <u>Penn, LLC v. Prosper Business Development Corp.</u>, 2012 WL 5948363 (S.D. Ohio Nov. 28, 2012) and <u>Brown v. Tellermate</u>, 2014 WL 2987051 (S.D. Ohio July 1, 2014), the Court granted motions seeking to lift the AEO designations.

Bio-Energy argues that not only did Guild fail to offer concrete examples of competitive harm, Guild simply cannot.  Bio-Energy asserts that it is willing to limit the disclosure of the information to only its officers and executives.  Further, it contends that the information does not contain Guild's proprietary technologies or formulas and Bio-Energy does not compete with Guild.  For these reasons, Bio-Energy explains, there is no possibility of competitive injury to Guild if the AEO designation is lifted.

In response, Guild contends that Bio-Energy's motion must be denied for two reasons.  First, Guild argues that Bio-Energy "has no real need to broaden disclosure."  As Guild sees it, Bio-Energy is only seeking to broaden disclosure in order to determine whether to continue litigation or pursue settlement, an improper purpose.  Further, Guild asserts that, as a vendor to Bio-Energy and as its competitor, Guild will suffer harm if decision makers at Bio-Energy and its parent company, Ingenco, obtain Guild's private financial information.

With respect to its first point, Guild argues that Bio-Energy's purported need for seeking this information initially – that this information is relevant to the issue of punitive damages – is satisfied with the AEO designation.  Guild asserts that Bio-Energy's claim that someone beyond its counsel needs

access to the information to argue a claim for punitive damages is suspect. Rather, Guild believes that Bio-Energy's real purpose in seeking to have the designation broadened is to allow Bio-Energy to show the information to Chuck Packard, Ingenco's president, in order for Bio-Energy to determine "'whether to fish or cut bait.'"

With respect to its second point, Guild has submitted the affidavit of Mark Hartman, its chief executive officer. According to Mr. Hartman, if Bio-Energy has access to Guild's private financial information, Guild's negotiating position as a vendor will be immediately harmed. This is so, he explains, because the bio-energy market is a small market with few entry barriers, making negotiations over pricing and terms critical. According to Mr. Hartman, the information contained in Guild's financial production, including capital structure, revenue, G&A costs, and profits goes directly to its pricing and business model.

Mr. Hartman further explains that because Bio-Energy has turned itself into Guild's competitor, Guild's competitive marketplace position will be harmed by a broadening of the designation. He cites Bio-Energy's attempt to reverse engineer Guild's system, Bio-Energy's violation of its non-disclosure obligations, and Bio-Energy's use of discovery to obtain trade secrets as support for Guild's position that competitive harm is imminent. Finally, he asserts that the disclosure of this information to Bio-Energy's experts, Dr. Kent Knaebel and Dr. James Ritter, would be devastating to Guild because they too are Guild's competitors.

The final point Guild raises is that the tax returns produced to Bio-Energy contain private information including officers' names, social security numbers and annual compensation. Guild argues that there is no reason for such personal

-3-

information to be shared with anyone at Bio-Energy.

In reply, Bio-Energy argues that it is not seeking to broaden the designation to address the issue of Guild's collectability. It maintains that its purpose is simply to allow a discussion of the appropriate punitive damages amount to seek. Moreover, Bio-Energy asserts, its intention with respect to this information is completely irrelevant to the question before the Court.

In focusing on what it views as the sole issue before the Court, Bio-Energy contends that Guild has offered nothing beyond speculative and conclusory statements in support of Guild's claim of specific, material competitive harm. Bio-Energy explains at some length that Mr. Hartman's statements regarding the potential for imminent competitive harm lack any factual basis. For example, Bio-Energy argues that, contrary to Mr. Hartman's representations, Guild's segment of the bio-energy market has significant entry barriers and knowledge of Guild's financial position will not reduce those barriers and permit Bio-Energy's entry. Bio-Energy explains that its year-long search for economically viable alternatives to Guild's system confirms the specialized nature of Guild's technology within the bio-energy market.

Further, Bio-Energy notes that knowledge of Guild's financial position will not result in any competitive edge with respect to pricing because individual project pricing cannot be distilled from the aggregated financial information Guild provided. Bio-Energy argues that not only is that the case, but Guild has a monopoly on the technology such that Bio-Energy has no choice but to purchase from Guild, making the potential for differences in pricing or terms irrelevant.

Finally, Bio-Energy stresses that it simply is not Guild's competitor in any line of business. However, Bio-Energy notes

-4-

that, to the extent Guild's resistance to broadening the designation is driven by its concern over the potential for disclosure of this information to Drs. Knaebel or Ritter, Bio-Energy has offered to restrict access to only Bio-Energy officers and executives.

## II. Analysis

As has become routine in this case, the resolution of the current issue between the parties does not require lengthy analysis. As Bio-Energy contends, and as Guild apparently concedes, the law on this issue is well-established and straightforward. Succinctly stated, because of the extremely restrictive nature of an AEO designation, the party seeking such a designation must provide specific evidence of the harm it will suffer if the designation is broadened. See Penn, LLC, 2012 WL 5948363 at *4; Tellermate, 2014 WL 2987051 at *22. Consequently, the only issue before the Court is whether Guild has met this burden. For the following reasons, the Court concludes that it has not.

While Guild has made an evidentiary submission in the form of an affidavit from its CEO, the Court does not find that the information contained in that affidavit demonstrates the potential for material, competitive harm. The two primary points Guild raises in its effort to demonstrate harm are the potential for an unearned pricing advantage and Bio-Energy's status as Guild's competitor. However, the information contained in Mr. Hartman's affidavit directed to these points can only be characterized as conclusory. That is, his statements are of the sort summarily disregarded by Courts when considering the viability of an AEO designation.

For example, Mr. Hartman avers generally that knowledge of the financial information contained in the documents "would provide both customers and competitors with a significant,

unearned advantage when pricing projects." However, Mr. Hartman provides no detailed examples of what specific information would lead to an unearned advantage or the potential extent of any such advantage. Some explanation of the interplay between the information provided and pricing seems especially necessary for the reasons Bio-Energy highlights - the information as provided does not disclose how many discrete projects are reflected or the time period of those projects.

Further, Mr. Hartman declares that, because Bio-Energy reverse engineered Guild's system and allegedly violated its confidentiality obligations in order to find an alternative to Guild's system, Bio-Energy "is also a competitor of Guild." Absent more detailed information, the Court is not persuaded that Bio-Energy transformed into Guild's competitor simply by attempting to address a technology issue independent of Guild's assistance. Mr. Hartman's declarative statements are insufficient to support a leap from Bio-Energy's desire to address a technological issue arising in a system it purchased for use its own facility to Bio-Energy's desire to become a manufacturer or distributor of such a system. To the extent that the driving force behind Guild's position is its belief that Bio-Energy's experts are Guild's competitors, however, this issue is resolved by Bio-Energy's offer to limit access to this information to Bio-Energy's officers and executives.

Because Guild has not sufficiently demonstrated any specific harm it will suffer if the AEO designation is lifted, Bio-Energy's motion to compel will be granted. Guild will be directed to designate the documents as "Confidential - Subject to Protective Order." Access to these documents will be limited to Bio-Energy's counsel, its officers, and executives. Because individual social security numbers are considered personally identifying information and typically redacted, the Court will

-6-

order their redaction here.

### III. Conclusion

For the reasons set forth above, the motion to compel (Doc. 178) is granted as follows. Guild shall remove the AEO designation from all documents produced to Bio-Energy in response to the Court's previous order (Doc. 169). The documents shall be designated as "Confidential - Subject to Protective Order." Access to these documents is limited to Bio-Energy's counsel and Bio-Energy's officers and executives. Guild shall redact the individual social security numbers from the information.

### V. Motions for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge